# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| STRAGENT, LLC and SEESAW FOUNDATION, <br><br>          Plaintiffs, <br><br>    vs. <br><br> CLASSMATES ONLINE, INC.; CLASSMATES MEDIA CORPORATION; UNITED ONLINE, INC.; GANNETT CO., INC.; LINDEN RESEARCH, INC.; MEEBO, INC.; MTV NETWORKS; VIACOM INC.; MYLIFE.COM, INC.; MYSPACE, INC.; NOVELL, INC.; PLAXO, INC.; and TWITTER, INC., <br><br>          Defendants. | Case No. 6:10-cv-00242-LED |

**DEFENDANT CLASSMATES ONLINE, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, FED. R. CIV. P. 12(b)(6)  BASED ON THE FAILURE OF THE PATENT-IN-SUIT TO CLAIM PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF ISSUES ............................................................................ 2

III.    BACKGROUND ............................................................................................. 2

    A.    The Patent-In-Suit ................................................................................ 2

    B.    The Claims ........................................................................................... 3

IV.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE ASSERTED PATENT FAILS TO CLAIM PATENTABLE SUBJECT MATTER ............................. 5

    A.    The Applicable Legal Standards ........................................................ 5

        1.    35 U.S.C. § 101 Issues Are Resolvable On A Motion To Dismiss ........... 5

        2.    Patentable Subject Matter Under 35 U.S.C. § 101 ...................... 5

            a.    Abstract Ideas Such As Algorithms Are Not Patentable ............... 5

            b.    The MOT Test is a "Useful and Important Clue" .......................... 6

            c.    The *Benson/Flook/Diehr* Trilogy ...................................................... 7

            d.    The Patent-in-Suit Issued Under A Now-Superseded Test .......... 10

    B.    The Patent's Claims Are Invalid Under 35 U.S.C. § 101 .................... 11

        1.    The Claims Cover Unpatentable Abstract Ideas ........................................ 11

            a.    The "Method" Claims .................................................................. 12

                 (i)    "Sending A Message" And Using Algorithms Do Not Make The Claim Patentable ........................ 13

                 (ii)    "Communications Network" Does Not Make The Claim Patentable ............................................ 13

                 (iii)    "Device" Does Not Make The Claim Patentable .............. 14

                 (iv)    "Presenting … Data" Does Not Make The Claim Patentable ...................................................... 15

                 (v)    "Receiving User Input" Does Not Make The Claim Patentable ...................................................... 15

            b.    Redrafting The Method Claims To Recite "Computer Readable Media" Does Not Create Patentability ......................... 16

            c.    The "System" Or "Device" Claims ............................................. 17

         2.    The '722 Claims Are Also Unpatentable When Evaluated Under The MOT Test ................................................................................. 18

            a.    The "M" Part: The '722 Claims Are Not Tied To A *Particular* Machine Or Apparatus ............................................ 18

                 (i)    The "Method" Claims ...................................................... 18

## TABLE OF CONTENTS

**Page**

(ii)    The "System"/"Device"/"Processor" Claims ................... 18

b.    The "T" Part: The '722 Claims Do Not Transform an Article Into a Different State or Thing......................................... 19

V.    CONCLUSION............................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AT&T Corp. v. Excel Communs., Inc.*,
   172 F.3d 1352 (Fed. Cir. 1999)........................................................................6, 17

*Bilski v. Kappos*,
   561 U.S. --, 130 S. Ct. 3218 (2010) ...............................................................Passim

*Cybersource Corp. v. Retail Decisions, Inc.*,
   620 F. Supp. 2d 1068 (N.D. Cal. 2009) ............................................4, 13, 16, 20

*Dealertrack, Inc. v. Huber*,
   657 F. Supp. 2d 1152 (C.D. Cal. 2009) .........................................................14, 20

*Diamond v. Diehr*,
   450 U.S. 175 (1981).........................................................................................Passim

*Every Penny Counts, Inc. v. Bank of America Corp.*,
   No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626 (M.D. Fla. May 27, 2009)................. 7, 16-17

*Ex parte Atkin*,
   No. 2008-4352, 2009 WL 247868 (B.P.A.I. Jan. 30, 2009)................................7, 17

*Ex parte Birger*,
   No. 2009-6556, 2010 WL 2800803 (B.P.A.I. July 13, 2010)..............................4, 15

*Ex parte Cornea-Hasegan*,
   89 U.S.P.Q.2d 1557 (B.P.A.I. 2009)........................................................................16

*Ex parte Greene*,
   No. 2008-4073, 2009 WL 1134839 (B.P.A.I. Apr. 24, 2009) .................................20

*Ex parte Holtz*,
   No. 2008-004440, 2009 WL 2586625 (B.P.A.I. Aug. 24, 2009) ..................... 17-18

*Ex parte Mitchell*,
   No. 2008-2012, 2009 WL 460662 (B.P.A.I. Feb. 23, 2009) .................... 4, 14, 17-18

*Ex parte Proudler*,
   No. 2009-6599, 2010 WL 2727840 (B.P.A.I. July 8, 2010)...................................15

*Fuzzysharp Techs. Inc. v. 3D Labs Inc.*,
   No. C 07-5948 SBA, 2009 WL 4899215 (N.D. Cal. Dec. 11, 2009) ....................15

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)..........................................................................................Passim

## TABLE OF AUTHORITIES

**Page(s)**

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) .......................................................................... Passim

*In re Comiskey*,
    499 F.3d 1365 (Fed. Cir. 2007) .............................................................................8

*In re Comiskey*,
    554 F.3d 967 (Fed. Cir. 2009) ...............................................................................5

*In re Grams*,
    888 F.2d 835 (Fed. Cir. 1989) ..........................................................................4, 16

*In re Nuijten*,
    500 F.3d 1346 (Fed. Cir. 2007) .............................................................................5

*In re Schrader*,
    22 F.3d 290 (Fed. Cir. 1994) .........................................................................16, 20

*In re Walter*,
    618 F.2d 758 (C.C.P.A. 1980) .............................................................................16

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
    No. 07-80286-CIV, 2008 WL 6153736 (S.D. Fla. Oct. 27, 2008) ...................13, 20

*SEC v. Chenery Corp.*,
    318 US 80 (1943) .................................................................................................11

*State Street Bank & Trust Co. v. Signature Financial Group, Inc.*,
    149 F.3d 1368 (Fed. Cir. 1998) ...........................................................................10

*Ultramercial, LLC v. Hulu, LLC*,
    No. CV 09-06918 RGK ...........................................................................5, 13, 15

### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

35 U.S.C. § 101 ...................................................................................................... Passim

35 U.S.C. § 282 .............................................................................................................11

Fed. R. Civ. P. 12(b)(6)....................................................................................................5

## I.     INTRODUCTION

The Complaint in this case should be dismissed for failure to state a claim because, as a matter of law, the asserted patent fails to claim patentable subject matter, and therefore cannot be enforced against Defendant Classmates Online, Inc. ("Classmates" or "Defendant").   As the Supreme Court in *Bilski v. Kappos*, 561 U.S. --, 130 S. Ct. 3218 (2010) reiterated, fundamental principles, including abstract ideas, are not patentable subject matter under 35 U.S.C. § 101. Post-*Bilski* district court decisions have held that § 101 issues can be raised on a motion to dismiss because, in the absence of patentable subject matter, no claim for relief is stated.

The Federal Circuit's decision in *Bilski* held that the sole test for patent eligibility under § 101 was the "particular machine-or-transformation of an article" test (sometimes referred to as the "machine-or-transformation" or "MOT" test), under which a process claim is patent-eligible *only* if "(1) it is tied to a *particular* machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008).   While the Supreme Court declined to adopt the particular machine-or-transformation of an article test as the *sole* test, the Court explained that the test is nevertheless "a useful and important clue" for determining patent eligibility. *Bilski*, 130 S. Ct. at 3227.   The Supreme Court also re-confirmed that abstract ideas were not patentable.

The patent-in-suit essentially describes and claims methods for storing and sending a message.   The methods claimed consist of various permutations of a series of steps, including retrieving data, presenting the data to a user, receiving user input, and sending a message.   These steps are nothing more than an unpatentable abstract idea.   Furthermore, under the MOT test, the claims of the patent-in-suit are not patent-eligible because all of the steps claimed in the patent, at best: (1) just recite a method performed on a programmed computer that fails to impose any meaningful limits on the claim's scope; and (2) do not purport to transform any article, as the

steps do little more than recite storing and/or sending a message from one point to another.  The fact that some of the claims are cast in terms of a "computer-readable medium," "device," or a "system" does not change the result.    The patent in suit is invalid under § 101 and the suit should be dismissed.

## II.    STATEMENT OF ISSUES

The issue on this motion is whether the complaint should be dismissed for failure to state a claim because the patent asserted is not directed to patentable subject matter.

## III.    BACKGROUND

### A.    The Patent-In-Suit

The patent-in-suit is U.S. Patent No. 6,665,722, as attached to the Second Amended Complaint (Dkt. # 1, Ex. A). As the Abstract of the patent-in-suit describes, the invention pertains to a method for storing and/or sending a message.  After a user selects a destination to which to send the message, the message is sent if certain conditions are met.

Although the specification does not always use perfectly consistent nomenclature when referring to the "communication device," the specification states that the "communication device" may be any of a number of functionally indistinct devices, such as a "cellular phone, a **personal or portable computer**, a personal digital assistant (PDA) or the like." Ex. A, 3:56-58 (emphasis added).  The specification also states that while communication may occur between wireless devices, the communication "may also occur . . . through a data network (e.g., the Internet).  Such communication would allow messages to be stored on a data server connected to the data network." *Id.* at 12:12-16.  The "device identifiers" are information that is "machine-readable" (*see id.* at 4:49-51), i.e., information that can be used by a machine such as a personal computer.  The specification also establishes that the "data processing functions" performed by the alleged invention are done through software, i.e., "data and instructions for use by processing

unit 325" which are stored in computer memory.  Ex. A, 4:10-15.  Thus, the patent is directed to a computer-based software process for storing and/or sending messages.

### B.      The Claims

The '722 patent has 48 claims directed to combinations and permutations of limitations relating to storing and/or sending a message.  Although all of the claims will be addressed by this motion, it is believed that Plaintiff specifically intends to assert at least Claim 22 against Classmates, and that claim will therefore be analyzed as a representative claim.

> 22. A method of sending a message to one or more recipients in a communications network, comprising:
>
> retrieving device identifiers from a list of device identifiers stored in a memory of a first communication device, said device identifiers comprising at least one of audio, pictorial and video data;
>
> presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual form;
>
> receiving user input in response to said presentation;
>
> designating a second communication device as a destination for the message based on said user input; and
>
> sending the message to the second communication device.

All of the claims are essentially "method" claims like Claim 22, although some claims rewrite the method claims as "computer-readable media" or "system" or "device" claims.  All of the method claims of the patent, and their "computer-readable media" and "system" counterparts are summarized in the table below.

| Method Claims | "Computer-Readable" Counterpart | "System" or "Device" Counterpart |
|---|---|---|
| **22** - Performs the "sending" step of the "store and send" algorithm. | **24** | **26** |
| **23** - Dependent on **22** and designates a destination. | **25** | **27** |
| **1, 2** - Performs forwarding a message and extracting and storing data | | **3** |
| **7** - similar to **22**, except **7** claims instructions for performing a method of "providing an identifier" that involve inputting data, converting data into "device identifier" data, and storing the data. | **12** | **17** |
| **8-11** - Dependent on **7** and classify the type of data input in **7**. | **13-16** | **18-21** |
| **28** - Method of authorizing transmission of a message from a first communication device and sending an authorization message. | **29** | **30** |
| **31** - Corresponds to **22**, except **31** includes a preliminary step of receiving a message. | **36** | **41** |
| **32-35** - Dependent on **31** and add limitations similar to **8-11**. | **37-40** | **42-45** |
| **46** - Combines preliminary steps of **31**, with other steps to store, retrieve, and forward a message. | **4**[1] | **48**[2] |
| **47** - Dependent on **46** and repeats the retrieving and forwarding steps of **46** to send to other destinations. | **5-6** | |

---

[1] It should be noted that Claims 4-6 are odd claims that do not correlate directly to the method claims.  Claim 4 is directed to an abstract "data structure encoded on a computer readable medium" having a "first identifier" and a "second identifier."  Claims 5 and 6 are dependent on 4 and add additional abstract data to the data structure.  These claims are perhaps the most blatantly unpatentable of all the claims in the patent.  As district courts and the B.P.A.I. have repeatedly found, abstract data structures are not patentable.  *Ex parte Birger*, No. 2009-6556, 2010 WL 2800803, at *2-3 (B.P.A.I. July 13, 2010) ("A claim that recites no more than software, logic or a data structure (i.e., an abstraction) does not fall within any statutory category."); *see also Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009) ("It is difficult to distinguish this creation of a data structure from the combination of a data gathering step and an algorithm rejected in *In re Grams*, 888 F.2d 835 (Fed. Cir. 1989)."); *Ex parte Mitchell*, No. 2008-2012, 2009 WL 460662, at *5-6 (B.P.A.I. Feb. 23, 2009).

[2] Claim 48 claims a "communication network" performing steps claimed in Claims 46 and 22.

## IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE ASSERTED PATENT FAILS TO CLAIM PATENTABLE SUBJECT MATTER

### A. The Applicable Legal Standards

#### 1. 35 U.S.C. § 101 Issues Are Resolvable On A Motion To Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the plaintiff's claims. Subject matter patentability is a threshold requirement of stating a valid claim for relief. *Ultramercial, LLC v. Hulu, LLC*, No. CV 09-06918 RGK (PLAx), 2010 WL 3360098, at *2 (C.D. Cal. Aug. 13, 2010)[3] (resolving subject matter patentability on a motion to dismiss). "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and any claim that fails to meet the requirements of § 101 is invalid as a matter of law. *See In re Bilski*, 545 F.3d at 950; see *also In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (*sua sponte* reviewing whether claims on appeal are patent-eligible subject matter).

#### 2. Patentable Subject Matter Under 35 U.S.C. § 101

##### a. Abstract Ideas Such As Algorithms Are Not Patentable

35 U.S.C. § 101 provides that "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Section 101 lists four categories of patentable subject matter: process, machine, manufacture, or composition of matter. "[T]he claimed subject matter must fall into at least one category of statutory subject matter" to be patentable. *In re Nuijten*, 500 F.3d 1346, 1354 (Fed. Cir. 2007). Under judicial interpretations of § 101, "laws of nature, natural phenomena, and abstract ideas"

---

[3] A copy of this case and all other unpublished cases cited herein are attached to the supporting declaration of Victor de Gyarfas.

are not patentable subject matter, regardless of how a patent claim is drafted (i.e., whether to a process or machine).[4]  *Bilski*, 130 S. Ct. at 3225; *see also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).  "[A]n algorithm, or mathematical formula, is like a law of nature, which cannot be the subject of a patent." *Diamond v. Diehr*, 450 U.S. 175, 186 (1981).

### b.      The MOT Test is a "Useful and Important Clue"

As discussed *supra*, the Supreme Court held that the MOT test, while not the *sole* test for what constitutes a "process" under § 101, "is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under §101." *Bilski*, 130 S. Ct. at 3227.  The above-mentioned restrictions as to field-of-use also apply when evaluating patent claims under the *particular* machine-or-transformation of an article test, as the "machine implementation" or "transformation" must "impose meaningful limits on the claim's scope." *In re Bilski*, 545 F.3d at 961.  Thus, the rule that abstract ideas are unpatentable and the particular machine-or-transformation of an article test both apply whether the claim is written as a "process" or otherwise.[5]

_____

[4]  In some instances, patent applicants have tried to add a "field-of-use" limitation (e.g., a digital computer) in an attempt to limit the abstract idea to all uses in only one field or technological environment.  This type of limitation is insufficient to render an otherwise ineligible claim patent-eligible because it would pre-empt the abstract idea itself.  *Bilski*, 130 S. Ct. at 3229-31; *see also Benson*, 409 U.S. at 71-72 (finding that where an algorithm "has no substantial practical application except in connection with a digital computer," the claim was not patent-eligible because otherwise the patent "would be a patent on the algorithm itself"); *Diehr*, 450 U.S. at 191 (explaining that the prohibition on patenting "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment"); *Flook*, 437 U.S. at 589-90 (holding the claim unpatentable even though it was limited to use in the petrochemical industries).

[5]  *See Benson*, 409 U.S. 63, 67-68 (1972) ("We dealt there with a 'product' claim, while the present case deals with a 'process' claim.  *But we think the same principle applies.*") (emphasis added); *AT&T Corp. v. Excel Communs., Inc.*, 172 F.3d 1352, 1357 (Fed. Cir. 1999), *abrogated on other grounds by In re Bilski*, 545 F.3d at 960 n.19 ("Whether stated implicitly or explicitly, we consider the scope of Section 101 to be the same regardless of the form—machine

All of the asserted claims in this case can be characterized as "method" or "process" claims because they all require the performance of certain steps to store and/or forward messages, and any re-drafting of the claims as a "system," or "computer-readable media," or "data structure" for example, does not change that fact.[6]

### c.   The *Benson/Flook/Diehr* Trilogy

In *Bilski*, the Supreme Court explained that the § 101 issue can be resolved without relying on categorical rules, but instead by reference to the Court's "guideposts" in *Benson*, *Flook*, and *Diehr*. *Bilski*, 130 S. Ct. at 3229-31.  The Supreme Court concluded that Bilski's claims were unpatentable because they were more like the rejected claims in *Benson* and *Flook* than they were like the patent-eligible claims in *Diehr*. *Id.*  Similarly, the '722 claims are simply a series of steps (which themselves are also abstract ideas) that involve storing, sending, and forwarding messages under certain conditions.  These steps do not result in any real-word transformation.  They are therefore like the unpatentable claims presented in *Benson* and *Flook*, and unlike the claims approved in *Diehr*.  A brief overview of the *Benson*, *Flook*, and *Diehr* "guidepost" cases follows.

**Benson**.  As *Bilski* explains, *Benson* affirmed the rejection of a patent application for "an algorithm to convert binary-coded decimal numerals into pure binary code."  *Bilski*, 130 S. Ct. at

_____

or process—in which a particular claim is drafted.").

[6] *See, e.g., Every Penny Counts, Inc. v. Bank of America Corp.*, No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626, at *6-7 (M.D. Fla. May 27, 2009) (finding "system" claims that consisted of various steps, including entry of data, calculations and output of data, to be processes even though those steps were performed in connection with computers, cash registers, and networks); *Ex parte Atkin*, No. 2008-4352, 2009 WL 247868, at *8 (B.P.A.I. Jan. 30, 2009) (finding "system" claims that merely replaced the method claims limitation "establishing a plurality of labels," "performing inferencing," and "reordering said characters" with the terms "label definer," "inferencer," and "character reorderer" encompassed all means of performing the recited functions and were as broad as the patent-ineligible method claims).

3230 (citing *Benson*, 409 U.S. at 64-67).  *Benson* explained that "'one may not patent an idea,'

but that 'in practical effect that would be the result if the formula for converting . . . numerals to

pure binary numerals were patented in this case.'"  *Id.* (quoting *Benson*, 409 U.S. at 71).

Notably, the claims in *Benson* included an underlying, tangible, physical, computer

structure[7] that would use the algorithm,[8] but the claim was an unpatentable algorithm

nevertheless.  Indeed, the Supreme Court and the Federal Circuit "rejected the notion that mere

recitation of a practical application of an abstract idea makes it patentable." *In re Comiskey*, 499

F.3d 1365, 1377 (Fed. Cir. 2007).

*Flook*.  In *Flook*, the Court was presented with claims to "a procedure for monitoring the

conditions during the catalytic conversion process in the petrochemical and oil-refining

industries," where the only innovation was reliance on an algorithm.  *Id.* (citing *Flook*, 437 U.S.

at 585-86).[9]  Again, although the patent claimed a practical application for use with a computer

in the petrochemical field, the claims were held unpatentable under § 101.  Even though the

claims "had been limited so that [the invention] could still be freely used outside the

petrochemical and oil-refining industries," they nevertheless were not patent-eligible because

once the particular algorithm was removed from consideration, "'the application, considered as a

---

[7]   Claim 8, for example, recited "storing the binary coded decimal signals . . . in a shift register." *Benson*, 409 U.S. at 73-74 (Appendix).  There was an underlying physical structure (a shift register), and the conversion of data, which represented a number, into another format was a practical application for digital computers (*id*. at 71).

[8]   *See Flook*, 437 U.S. at 590 n.11 "It should be noted that in *Benson* there was a specific end use contemplated for the algorithm -- utilization of the algorithm in computer programming."

[9]   As the Court explained, the "patent application describes a method of updating alarm limits" where "[i]n essence, the method consists of three steps: an initial step which merely measures the present value of the process variable (*e.g.,* the temperature); an intermediate step which uses an algorithm to calculate an updated alarm limit value; and a final step in which the actual alarm limit is adjusted to the updated value."  *Flook*, 437 U.S. at 585.

whole, contain[ed] no patentable invention.'"  *Bilski*, 130 S. Ct. at 3230 (citing and quoting *Flook*, 437 U.S. at 589-90 & 594).

The *Bilski* Court explained that "*Flook* stands for the proposition that the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'"  *Id.* (quoting *Diehr*, 450 U.S. at 191-92). Together, *Benson* and *Flook* make clear that even if there is a practical application for a claimed invention in connection with a computer, (a) new algorithms are not patent-eligible and (b) an algorithm does not become patent-eligible merely because a claim is written to include non-algorithmic limitations, such as general purpose computer hardware, that would be insignificant in the absence of the algorithm.  Here, when the algorithms recited in the '722 claims are assumed to be prior art, there is simply nothing left.[10]

***Diehr***.  The claims in *Diehr* differed from those presented in *Benson* and *Flook* because they claimed a "previously unknown method for 'molding raw, uncured synthetic rubber into cured precision products,'" using an algorithm implemented on a computer to complete some of the steps.  *Id.* (quoting *Diehr*, 450 U.S. at 177).  *Diehr* concluded that because the claim was "an industrial process for the molding of rubber products, it fell within § 101's patentable subject matter."  *Id.* (quoting *Diehr*, 450 U.S. at 192-93).  The claims in *Diehr* were patent-eligible because the non-algorithmic elements, reciting the physical steps of molding raw, uncured synthetic rubber into cured precision products,[11] thus changing the molecular composition of the

---

[10]    The *Bilski* Court quoted *Flook* approvingly for holding the claim unpatentable under § 101 "because once that algorithm [wa]s assumed to be within the prior art, the application, considered as a whole, contain[ed] no patentable invention."  *Bilski*, 130 S. Ct. at 3230 (quoting *Flook*, 437 U.S. at 594).

[11]    "The process uses a mold for precisely shaping the uncured material under heat and pressure and then curing the synthetic rubber in the mold so that the product will retain its shape

rubber, were significant in the context of the claim.

The Court explained that "a physical and chemical process for molding precision synthetic rubber products falls within the § 101 categories of possibly patentable subject matter." *Diehr*, 450 U.S. at 184.  The Supreme Court reasoned that "[t]ransformation and reduction of an article to a different state or thing is the clue to the patentability of a process claim that does not include particular machines" and that "the claims involve the transformation of an article, in this case raw, uncured synthetic rubber, into a different state or thing," which, of course, is the "T" part of the "MOT" test.  *Id.*

### d.      The Patent-in-Suit Issued Under A Now-Superseded Test

As is evident from the discussion *supra*, the standard for determining whether an invention is patent-eligible has changed over the years.  In 1998, the Federal Circuit attempted to articulate a suitable test for patent-eligibility, stating that claims directed to algorithmic subject matter, which standing alone would be nothing more than abstract ideas, were eligible for patenting if they were "reduced to some type of practical application" – i.e., produced "a useful, concrete, and tangible result." *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998).   Following *State Street*, a wave of small businesses began seeking patent protection for techniques used in their businesses that they previously believed unpatentable.[12]  This 1998 standard was applied by the U.S. Patent and Trademark Office ("USPTO") to approve the patent application for the patent-in-suit, which issued December 16, 2003.  This liberal standard of patentability was in place until it was superseded by the Federal

---

and be functionally operative after the molding is completed."  *Diehr*, 450 U.S. at 177.

[12]     *See* H.R. Conf. Rep. No. 106-464, at 122 (Nov. 9, 1999) ("In the wake of *State Street*, thousands of methods and processes used internally are now being patented.  In the past, many businesses that developed and used such methods and processes thought secrecy was the only protection available.").

Circuit's en banc holding in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008).   In that opinion, the Federal Circuit expressly overruled *State Street*'s "useful, concrete and tangible result" test. *Id.* at 959-60, n.19.   The '722 patent must be analyzed under the newer - and stricter - standard set forth in the Supreme Court's decision in *Bilski*.[13]

## B.    The Patent's Claims Are Invalid Under 35 U.S.C. § 101

### 1.    The Claims Cover Unpatentable Abstract Ideas

The '722 claims are like the unpatentable claims in *Benson*, *Flook*, and *Bilski*.   They bear no resemblance to the patentable claims in *Diehr*, which transformed a physical article in an industrial process and contained physical steps.   As the "Summary of the Invention" provides, the '722 patent is for storing and/or forwarding messages.   Thus, the invention as a whole is entirely abstract, and merely transmits information from one general purpose device to another under certain conditions.   None of the algorithm steps in the '722 process physically transform anything to a different state or thing.   Stated differently, the claims cover nothing more than abstract ideas.   Indeed, the concept of retrieving a machine address or "device identifier" from a database, storing a message until a condition, such as a user decision, is met, and then sending the message is an algorithm that is the essence of an abstract idea.   Indeed, if the unpatentable

---

[13] Given that the patent-in-suit was issued when the USPTO was applying an incorrect legal standard for patent eligibility, the 35 U.S.C. § 282 presumption of validity should only have to be overcome by, at most, a preponderance of the evidence, if any presumption applies at all. As the Supreme Court stated in *SEC v. Chenery Corp.*, 318 US 80, 94 (1943): "[I]f the action [of an agency] is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." Here, the USPTO misconceived the law when it issued the patent-in-suit, applying too liberal a standard. Accordingly, the presumption of validity should not have to be overcome by clear and convincing evidence.   To be clear, irrespective of whether the court applies a clear and convincing standard, or a preponderance of the evidence standard, this motion should be granted, as a matter of law.   If any burden of proof standard is applied, however, it would be most appropriate to apply the preponderance of the evidence standard when determining that the presumption of validity has been overcome for the patent-in-suit.

abstract idea of an algorithm to retrieve a machine address and store and forward messages under certain conditions is removed from the '722 claims, nothing patentable remains.[14]

The claims of the patent-in-suit can be classified into three categories—"method" claims, "computer readable media" claims, and "system" or "device" claims.  All variations attempt to claim the same abstract idea, however, and all are invalid under § 101, as discussed *infra*.  While the claims are analyzed in this brief, provided in Appendix 1 hereto is a table that identifies, for each claim, why it is not patentable subject matter.

### a.      The "Method" Claims

Claims 22-23, 1-2, 7-11, 28, 31-35, 46-47 are directed to methods for sending a message. The abstract nature of each element of these claims is discussed below for exemplary claim 22.

> 22. A method of sending a message to one or more recipients in a communications network, comprising:
>
> retrieving device identifiers from a list of device identifiers stored in a memory of a first communication device, said device identifiers comprising at least one of audio, pictorial and video data,
>
> presenting the at least one of audio, pictorial and video data to a user of the first communication device in auditory or visual,
>
> receiving user input in response to said presentation,
>
> designating a second communication device as a destination for the message based on said user input, and
>
> sending the message to the second communication device.

---

[14]     Just as the unpatentable claims in *Flook* involved gathering data, performing a calculation, and updating an alarm limit, the '722 claims involve gathering data to be in a message, performing calculations to "retrieve" a "device identifier" or "extract" data, and sending the data.  Just as the algorithm in *Benson* was an abstract idea even though it was tied to shift registers, the '722 claims are also nothing more than an unpatentable algorithm even when recast to include a nominal recitation of a computer.

(i)      **"Sending A Message" And Using Algorithms Do Not Make The Claim Patentable**

The preamble and last limitation recite "sending a message."  In *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, No. 07-80286-CIV, 2008 WL 6153736 (S.D. Fla. Oct. 27, 2008), the patent-in-suit claimed methods and "machine readable storage" for an algorithmic process involving deciding whom to send e-mails by matching a profile with a group of recipients, transmitting e-mails, and performing some other algorithmic steps.  *Id.* at *1, *9-*10.  The court in *Perfect Web Techs.* found the claims unpatentable, because the claims were "merely a series of algorithms" (*id.* at *9) and, even though messages were transmitted via e-mail, that did not render the claims patentable subject matter.  Similarly, the '722 claims use algorithms to make determinations as to when messages are stored and forwarded.  The use of algorithms and sending messages does not make the patent-in-suit statutory subject matter, just as the patent in *Perfect Web Techs.* was not statutory subject matter.

(ii)      **"Communications Network" Does Not Make The Claim Patentable**

The preamble references a "communications network."  The specification states that the "network" may be the Internet.  Ex. A, 12:12-16.  The court in *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) rejected the patentability of claims reciting a network which was the Internet.  Reference to such a network is merely "insignificant extra-solution activity" because an otherwise unpatentable process should not become patentable by "tossing in references" to such a network.  *Id.*  Further, limiting otherwise non-statutory subject matter to a particular technological field, such as the claimed network, is not a meaningful limitation and cannot render a claim patentable.  *Id.* at 1077-78.  See also *Ultramercial,* 2010 WL 3360098, at *4 (agreeing with the *Cybersource* analysis).

### (iii)     "Device" Does Not Make The Claim Patentable

As discussed above, in *Benson*, the methods at issue were for use in a device which was a general purpose computer and even included an underlying physical structure of a shift register. 409 U.S. at 73-74. The recitation of a "device" or "device identifiers" in the claims of the patent-in-suit does not render them patentable subject matter because the "device" can be just a general purpose computer, as in *Benson*.[15] The district court in *Dealertrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1155-56 (C.D. Cal. 2009) also rejected the proposition that recitation of a "central processor" and a display device could render a claim patentable, finding that such recitations are not a *particular* machine.[16] Here, it is undisputable that claiming the abstract idea for the process of gathering data for a message, performing algorithmic steps to retrieve a machine address, extracting data, storing data, and sending data in a computer preempts that process. The process is performed using computers. Thus, adding a computer, or synonyms for a computer, to the claims in the patent-in-suit is a meaningless limitation.

The asserted computer claims are therefore similar to claims in a number of recent cases that district courts and the B.P.A.I. have rejected as patent-ineligible because the addition of a "computer" or "computer readable media" to claim language was a mere field-of-use restriction.

_____

[15]    Indeed, the '722 patent establishes that the device can be a general purpose "personal or portable computer" (Ex. A, 3:57-58).

[16]    Additionally, the recitation of "memory" does not save the claims. In *Ex parte Mitchell*, No. 2008-2012, 2009 WL 460662, at *5-6 (B.P.A.I. Feb. 23, 2009), the claims were directed to a method concerning information about a data structure, a computer readable medium containing instructions for the method about the data structure, and a "system" comprising, among other things, a "processor" and "memory" for implementing the method about the data structure. *Mitchell* establishes, in connection with claims very analogous to those of the patent-in-suit, that a memory used for storing does not render a claim patentable, and any other result would result in allowance of a patent on an abstract idea. *Id.*

Here, the specification establishes that the "data processing" performed is through software instructions stored in computer memory. Ex. A, 4:10-15. [17]

### (iv)   "Presenting … Data" Does Not Make The Claim Patentable

The recitation of "presenting" media content such as "audio, pictorial and video data to a user" does not place the claims within § 101. Recently, in *Ultramercial, LLC v. Hulu, LLC*, No. CV 09-06918 RGK (PLAx), 2010 WL 3360098, at *2 (C.D. Cal. Aug. 13, 2010) the court analyzed claims directed to using an algorithm to determine when to display advertisements and allow users to view copyrighted media. Although the patentee argued in *Ultramercial* argued that transmitting an advertisement and making media content available rendered the claims patentable, the court *rejected* that argument because, even if implemented on a computer, such limitations do not limit the claims to a particular machine "in a meaningful way" (*id.* at *4-*5) and the transfer of data from one computer to another is not a "'transformation of an article' under § 101." *Id.* at *5. Rather, the core principle of displaying media involved in the *Ultramercial* claims was just an abstract idea. *Id.* at *6. Thus, the "presenting" media limitation in the claims of the '722 patent does not render the claims patent-eligible subject matter.

### (v)   "Receiving User Input" Does Not Make The Claim Patentable

The recitation of the nominal data gathering steps of "receiving user input" also does not

---

[17] In its first post-*Bilski* opinion addressing § 101, for example, the B.P.A.I. held that "[a] claim that recites no more than software, logic or a data structure (i.e., an abstraction) does not fall within any statutory category" and thus held that claims including a "computer apparatus" and "computer readable 'media'" were unpatentable. *Ex parte Proudler*, No. 2009-6599, 2010 WL 2727840, at *2-3 (B.P.A.I. July 8, 2010); *see also Ex parte Birger*, No. 2009-6556, 2010 WL 2800803, at *2-3 (B.P.A.I. July 13, 2010) (same). "[A]lthough Board decisions are not binding, they nonetheless may be considered persuasive authority." *Fuzzysharp Techs. Inc. v. 3D Labs Inc.*, No. C 07-5948 SBA, 2009 WL 4899215 (N.D. Cal. Dec. 11, 2009), at *5 n.2 (N.D. Cal. Dec. 11, 2009) (citing *Noelle v. Lederman*, 355 F.3d 1343, 1350 (Fed. Cir. 2004)).

place the claims within § 101. *Flook* involved the data gathering step of an initial step of measuring temperature. 437 U.S. at 585. The Court found this data gathering step was insufficient to impart patent-eligibility. Thus, the data gathering step of "receiving user input" in the claims of the patent-in-suit cannot impart patent-eligibility either.[18]

  **b.**   **Redrafting The Method Claims To Recite "Computer Readable Media" Does Not Create Patentability**

Claims 24-25, 4-6, 12-16, 29, 36-40 recite a "computer-readable medium" containing instructions for performing the "method" steps of the method claims. Indeed, the '722 patent-in-suit here simply appends the "computer-readable medium" phrase to its non-statutory method claims. More fundamentally, reciting computer readable media, however, does not render a claim patentable subject matter. The *Cybersource*, 620 F. Supp. 2d at 1071, 1078-79 decision specifically addressed the issue of claims reciting a "computer readable medium." *Cybersource* explained that, as the B.P.A.I. has repeatedly found, "simply appending 'A computer readable media including program instructions...' to an otherwise non-statutory process claim is insufficient to make it statutory." *Id.* at 1080. As such, the "computer-readable medium" claims in the '722 patent do not recite patentable subject matter.

---

[18] *See In re Schrader*, 22 F.3d 290, 294 (Fed. Cir. 1994) (holding a simple recordation step in the middle of the claimed process incapable of imparting patent-eligibility under § 101); *In re Grams*, 888 F.2d 835, 839-40 (Fed. Cir. 1989) (holding a pre-solution step of gathering data incapable of imparting patent-eligibility under § 101); *see also Benson*, 409 U.S. at 68-69; *In re Walter*, 618 F.2d 758, 770 (C.C.P.A. 1980) ("If § 101 could be satisfied by the mere recordation of the results of a non-statutory process on some record medium, even the most unskilled patent draftsman could provide for such a step."); *Every Penny Counts, Inc.*, 2009 U.S. Dist. LEXIS 53626, at *7 (finding that the use of machines "for data input and data output and to perform the required calculations" in the process was insignificant extra-solution activity); *Ex parte Cornea-Hasegan*, 89 U.S.P.Q.2d 1557, 1561 (B.P.A.I. 2009) ("Additional recitations of computer readable media, a hardware prediction unit, steps manipulating other data (floating-point operands) and determining whether to calculate d using floating point hardware are still insignificant extra-solution activities that fail to 'transform an unpatentable principle into a patentable process.'") (quoting *In re Bilski*, 545 F.3d at 957).

### c.       The "System" Or "Device" Claims

Lastly, claims 3, 17-21, 26-27, 30, 41-45, 48 re-cast the method claims in terms of non-specific "devices" or "systems."[19]   The requirement that a claim be directed to patent-eligible subject matter under § 101, however, cannot be circumvented by such deliberate alternative phraseology.   As explained by the Supreme Court, the determination of patentable subject matter does not "depend simply on the draftsman's art" and "[t]he concept of patentable subject matter under § 101 is not 'like a nose of wax which may be turned and twisted in any direction.'" *Flook*, 437 U.S. at 590, 593 (quoting *White v. Dunbar*, 119 U.S. 47, 51 (1886)). *See AT&T Corp. v. Excel Communs., Inc.*, 172 F.3d 1352, 1357 (Fed. Cir. 1999), *abrogated on other grounds by In re Bilski*, 545 F.3d at 960 n.19 ("Whether stated implicitly or explicitly, we consider the scope of Section 101 to be the same regardless of the form—machine or process—in which a particular claim is drafted."). Significantly, courts and the Board of Patent Appeals and Interferences ("B.P.A.I.") at the USPTO have repeatedly rejected similar attempts to redraft process steps to be a "system" in which the abstract idea steps are simply being performed by coined words corresponding to process steps. *See e.g.*, *Every Penny Counts, Inc.*, 2009 U.S. Dist. LEXIS 53626, at *6-7 ("***system***" claim including "a network" and a "computing means" not patentable).[20]   Likewise, as discussed *supra*, the use of a "device" such as a general purpose

---

[19]    For example, instead of "inputting" information (Claim 7) the device claims typically recite a "an input device configured" (Claim 17).   Instead of "retrieving device identifiers," (Claim 22) the device claims typically recite a "processor configured to: retrieve device identifiers" (Claim 26).   This rephrasing continues for all the other limitations.   (Ex. A)

[20]    *See also,  Atkin*, 2009 WL 247868, *8-9 ("***system***" claims including limitations such as "label defin***er***," "inferencer," and "character reorderer" not patentable); *Ex parte Mitchell*, No. 2008-2012, 2009 WL 460662, at *5-6 (B.P.A.I. Feb. 23, 2009) ("information processing ***system***" claim with a "processor" and "memory" not patentable); *Ex parte Holtz*, No. 2008-004440, 2009 WL 2586625, at *7 (B.P.A.I. Aug. 24, 2009) (finding that claims with a "compara***tor***" at most covered just software and even if this was structure, it was just a field of use restriction).   Some

computer does not make the claim patentable.

Like the method claims, the steps in these "system" and "device" claims are abstract ideas, and each term (processor, device, etc.) encompasses any and all ways of performing the function that follows the term.  They are thus non-patentable subject matter.

### 2.      The '722 Claims Are Also Unpatentable When Evaluated Under The MOT Test

As stated, the MOT test remains "a useful and important clue" in the analysis.  Just as the '722 claims are unpatentable abstract ideas, they also fail the MOT test.

### a.      The "M" Part: The '722 Claims Are Not Tied To A *Particular* Machine Or Apparatus

Whether drafted as "method," "computer-readable media," "system," or "computer" claims, all the asserted claims fail the "machine" prong of the *particular machine-or-transformation* of an article test because they are not tied to a *particular* machine.

### (i)      The "Method" Claims

The method claims fail the first prong of the test because they include no reference to any *particular* machine.  The claims include only nominal recitation of hardware, such as a "device" or "processor."  Under *Benson*, those recitations do not constitute a *particular* machine.

### (ii)      The "System"/"Device"/"Processor" Claims

None of the "system" claims includes a *particular* machine either.  First, the "system" claims are virtually the same as the method claims, except that the "ing" terms are replaced with "processor configured to" terms, such as substituting "a processor configured to: convert" (Claim

---

of these cases applied the machine-or-transformation test.  Others, including *Mitchell* and *Holtz*, also more generally applied the rule against patenting abstract ideas and that the computer structure was just a field of use restriction that would pre-empt the abstract idea itself.  Under either rationale, the cases demonstrate that the type of alternative phrasing of method claims into "device" claims employed in the '722 patent does not convert an unpatentable abstract idea into a patentable one.

17) for "converting" (Claim 7).  As explained above, numerous courts and the B.P.A.I., applying the *particular* machine-or-transformation of an article test, have repeatedly found that there is no machine when process steps are simply redrafted as a "system" claim.

Second, each of the terms in the system claims on its face, encompasses any and all ways (i.e., via any machine) of performing the recited function that follow the term.  Certainly, a non-specific "system" is not a "particular machine."

Third, those claims that recite a computer claimed as a "device" or "processor" do not transform the unpatentable principle into a patentable process because: (1) the recitation of a computer is merely a field-of-use restriction that does not impose any meaningful limit on each claim's scope, and thus the claims would pre-empt the abstract idea of storing and forwarding messages; (2) the recitation of a computer is merely insignificant extra-solution activity; and (3) the "computer" is at best a general purpose computer, not a "particular machine," so it places no meaningful limitation on the scope of the claims.

Thus, from any viewpoint, the '722 claims fail the "M" part of the MOT test.

### b.    The "T" Part: The '722 Claims Do Not Transform an Article Into a Different State or Thing

The '722 claims fail the "transformation" part of the MOT test because they do not transform any article into a different state or thing.  As discussed, the invention is directed to sending messages.  This alleged invention does not encompass any transformation of an article.  No change in the molecular structure of any physical thing occurs.  A method that merely gathers and manipulates data is not patentable.  *See In re Bilski*, 545 F.3d at 963.

Furthermore, any required storage of the messages in the '722 claims is not a transformation.  As the cases make clear, merely storing or extracting data from computer readable numbers or other data, however, does not involve transformation.  *See, e.g.,*

*Cybersource Corp.*, 620 F. Supp. 2d at 1073-74 (holding that the manipulation of credit card numbers by using them to build a map does not transform the credit card numbers or cards); *Dealertrack, Inc. v. Huber*, 657 F. Supp. 2d at 1154 (plaintiff conceding that the "aggregating" of data did not satisfy the transformation prong).[21]   Indeed, the storing of data is no more transformative than the gathering of data, which is, of course, non-transformative.  *See In re Bilski*, 545 F.3d at 963 ("We note that, at least in most cases, gathering data would not constitute a transformation of any article.").[22]

Finally, transmitting information is not a transformation.  *Perfect Web Techs.*, 2008 WL 6153736, at *1, *9-*10.  Thus, the '722 patent fails the "T" part of the test.

## V.    CONCLUSION

For each and all of the foregoing reasons, Classmates Online, Inc. respectfully submits that the complaint should be dismissed for failure to state a claim because the '722 patent does not claim patent-eligible subject matter.  As Plaintiff cannot amend the patent-in-suit to make it recite patent-eligible subject matter, it would be futile to give Plaintiff leave to amend.  As such, the Complaint should be dismissed with prejudice.

---

[21] See *Ex parte Greene*, No. 2008-4073, 2009 WL 1134839, at *5-7 (B.P.A.I. Apr. 24, 2009) ("computer ***system***" claim involving storing information and "means for" limitations not patentable)

[22]   Even if the storage of a calculated value could be considered a transformation (which it is not), it is also not central to the process in the patents, but is instead insignificant extra-solution activity.  *See Schrader*, 22 F.3d at 294 (finding that a recording step was insignificant extra-solution activity); *see also Benson*, 409 U.S. at 73-74 & 71-72 (finding the claim unpatentable even though it included an element requiring storage of binary coded decimal signals).

Dated:  October 18, 2010              Respectfully submitted,


                                      /s/ William J. Robinson
                                      William J. Robinson (CA Bar No. 83729)
                                      e-mail:  wrobinson@foley.com
                                      Victor de Gyarfas  (Texas Bar No. 24071250)
                                      e-mail:  vdegyarfas@foley.com
                                      Justin M. Sobaje (CA Bar No. 234165)
                                      email:  jsobaje@foley.com
                                      FOLEY & LARDNER LLP
                                      555 South Flower Street, Suite 3500
                                      Los Angeles, CA 90071-2411
                                      213.972.4500
                                      213.486.0065


                                      Clyde M. Siebman (TX Bar #18341600)
                                      e-mail:  siebman@siebman.com
                                      Siebman, Burg, Phillips & Smith, LLP
                                      Federal Courthouse Square
                                      300 N. Travis
                                      Sherman, TX 75090
                                      903.870.0070
                                      903.870.0066


                                      Attorneys for Defendant Classmates Online, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certified that the DEFENDANT CLASSMATES ONLINE, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, FED. R. CIV. P. 12(b)(6) BASED ON THE FAILURE OF THE PATENT-IN-SUIT TO CLAIM PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101 was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.

/s/    William J. Robinson
